JUDGE KATHLEEN CARDONE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

FILED
2022 JUN 29  AM 8:59
CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY

| | |
|---|---|
| **BRANDON CALLIER,**<br><br>Plaintiff,<br><br>v.<br><br>**PREMIUM MERCHANT FUNDING ONE, LLC** d/b/a **PMF** a New York Limited Liability Company<br><br>**Defendants.** | §§§§§§§§§§§§§ **EP22CV0223** |

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1. The Plaintiff is BRANDON CALLIER ("Plaintiff") a natural person, resident of the Western District of Texas, and was present in Texas for all automated text messages, in this case in El Paso County, Texas.

2. Defendant PREMIUM MERCHANT FUNDING ONE, LLC d/b/a PMF ("PMF") is a Limited Liability Company organized and existing under the laws of New York with its principal address at 55 Water Street, New York, New York 10004 and can be served via registered agent Corporation Service Company at 80 State Street, Albany, New York 12207.

### JURISDICTION AND VENUE

3. Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053

1

because that claim arises from the same nucleus of operative fact, i.e., Defendants' tele market in robocalls to Plaintiff; adds little complexity to the case.

4. Personal Jurisdiction. This Court has general personal jurisdiction over the defendant because they have repeatedly placed calls and automated text messages to Texas residents, derive revenue from Texas businesses, and they sell goods and services to Texas residents, including the Plaintiff.

5. Venue. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. Residing in the Western District of Texas when he received a substantial if not every single automated text message from the Defendant PMF that are the subject matter of this lawsuit.

6. This Court has venue over the defendants because the automated text messages at issue were sent by or on behalf of the above-named Defendant to the Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT
## OF 1991, 47 U.S.C. § 227

7. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

8. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic

telephone dialing system ('ATDS") or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

9. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

10. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

11. Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

12. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

13. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

14. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

15. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

16. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

17. The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

18. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

19. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal

quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## OVERVIEW OF THE TEXT MESSAGING MARKETING INDUSTRY

20. In recent years, marketers who often have felt stymied by federal laws limiting solicitation by telephone, facsimile machine, and email have increasingly looked to alternative technologies through which to send bulk solicitations cheaply.

21. One of the newest types of such marketing is to advertise through Short Message Services. The term "Short Message Service" or "SMS" describes a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 120-500 characters.

22. An "SMS message" is a text directed to a wireless device. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received.

23. The open rate for SMS messages exceeds 99%, and 90% of those messages are read within three minutes. Conversely, the open rate for an email in the finance industry is 21.56%.

24. Unlike more conventional advertisements, SMS calls, and particularly wireless or mobile spam can actually cost their recipients money, because cell phone users must frequently pay their respective wireless service providers either for each text message or call they receive or incur a usage allocation deduction to their text plan, regardless of whether or not the message is authorized.

25. Most commercial SMS messages are sent from "short codes" (also known as "short numbers"), which are special cellular telephone exchanges, typically only five or six-digit

extensions, that can be used to address SMS messages to mobile phones. Short codes are generally easier to remember and are utilized by consumers to subscribe to such services as television program voting or more benevolent uses, such as making charitable donations.

26. A short code is sent to consumers along with the actual text message and conclusively reveals the originator of the SMS message.

27. Text messages are "calls" within the context of the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 949 (9th Cir. 2009).

## FACTUAL ALLEGATIONS

28. Plaintiff has been on the National Do-Not-Call Registry since December 2007.

29. Plaintiff received at least thirteen unauthorized automated text messages ("the text messages") to his personal cell phone (915) 383-4604 from April 15, 2022, to June 26, 2012, from Defendant PMF soliciting their goods and services. *See "Exhibit A."*

30. Defendant PMF is a loan broker and offers merchant cash advances, small business loans, SBA loans, equipment financing, factoring purchase order financing, lines of credit, and commercial mortgages nationwide including Texas.

31. Plaintiff and Defendant PMF do not have any prior existing business relationships. Plaintiff has never been a customer or client of Defendant PMF.

32. Plaintiff did not give Defendant PMF his prior express written consent to receive the text messages.

33. The text messages Plaintiff received from Defendant PMF were generated and sent using an ATDS.

34. Specifically, to this case, Defendant PMF's texting software, by virtue of being inextricably linked to a computer operating system, has the capacity to generate random or

6

sequential telephone numbers.

35. The text messages Plaintiff received from Defendant PMF have caused Plaintiff actual harm. This includes the aggravation, nuisance, and invasions of privacy that result from the placement of such text messages, in addition, to wear and tear on his phone, interference with the use of his phone, and consumption of battery life.

36. Defendant PMF has been sued multiple times prior to this case for violating the TCPA *Blevins v. Premium Merchant Funding One, LLC* No. 2:18-cv-00377-GCS-EPD (S.D.OH., Apr. 24, 2018), *Ewing v. 8 Figure Dream Lifestyle, LLC et al.* No. 3:18-cv-01063 (S.D.CA., May. 29, 2018), *Fabricant v. Premium Merchant Funding One, LLC* No. 1:19-cv-00758-JSR (S.D.NY., Jan. 25, 2019), *Tenly Hardin v. Premium Merchant Funding One, LLC* No. 2:19-cv-07552-FMO-SK (C.D.CA., Aug. 30, 2019), *Ewing v. Premium Merchant Funding One, LLC* No. 3:20-cv-01965-AJB-AGS (S.D.CA., Oct. 05, 2020), *Ewing v. Premium Merchant Funding One, LLC* No. 3:22-cv-00215-JO-BGS (S.D.CA., Feb.16, 2022), *Shelton v. Premium Merchant Funding One, LLC* No. 2:22-cv-01346-ER (E.D.PA., Apr. 04, 2022) and continue their illegal behavior because violating the TCPA benefits Defendant PMF financially.

37. Defendant PMF knowingly and willfully authorizes the sending of text messages using an ATDS to millions of consumers' personal cell phones en mass soliciting their goods and services.

38. Defendant PMF knowingly and willfully violate the TCPA because when businesses get approved for their goods and services it benefits Defendant PMF financially.

39. The text messages Plaintiff received from Defendant PMF say "text to stop" at the bottom of the messages. On May 15, 2022, Plaintiff replied "stop" however the text messages continued. *"See Exhibit A 8 of 10"*.

40. The text messages Plaintiff received from Defendant PMF do not reveal their true identity or do not address Plaintiff by name.

41. On June 27, 2022, Plaintiff responded to one of the text messages received on June 26, 2022, for the sole purpose of identifying the company responsible for the illegal automated text messages.

42. Shortly after Plaintiff responded to the text message, he received an email from one of Defendant PMF's "funders" Sammy Gobert which revealed the company responsible for the text messages. *"See Exhibit B"*.

43. Table below displays the automated text messages made to Plaintiff by Defendant PMF:

| **Number** | **Date** | **Time** | **Caller ID** | **Notes** |
|---|---|---|---|---|
| 1. | 04/15/2022 | 7:10 AM | 833-373-1999 | Automated text message |
| 2. | 04/15/2022 | 8:05 AM | 855-681-3508 | Automated text message |
| 3. | 04/16/2022 | 9:34 AM | 855-681-3508 | Automated text message |
| 4. | 04/17/2022 | 9:45 AM | 855-681-3508 | Automated text message |
| 5. | 04/18/2022 | 10:09 AM | 855-681-3508 | Automated text message |
| 6. | 04/19/2022 | 9:18 AM | 855-681-3508 | Automated text message |

| 7.  | 05/02/2022 | 11:24 AM | 833-748-1867 | Automated text message |
| 8.  | 05/05/2022 | 2:26 PM  | 877-890-1791 | Automated text message |
| 9.  | 05/11/2022 | 11:49 AM | 877-890-1791 | Automated text message |
| 10. | 05/12/2022 | 4:42 PM  | 877-890-1791 | Automated text message |
| 11. | 05/15/2022 | 4:12 PM  | 833-505-1802 | Automated text message. Replied Stop. |
| 12. | 05/24/2022 | 8:30 AM  | 833-858-0171 | Automated text message |
| 13. | 06/26/2022 | 9:21 AM  | 877-839-1521 | Automated text message |

44. The text messages Plaintiff received from Defendant PMF were placed while knowingly ignoring the national do-not-call registry. The text messages were placed without training their agents/employees on the use of an internal do-not-call policy.

45. Plaintiff sent a request for Defendant PMF's internal do not call policy on June 26, 2022, to info@pmfus.com which is an email listed on their website they own and control https://www.pmfus.com/contact-us/.

46. Defendant PMF failed and/or refused to send Plaintiff a copy of any internal do not call policy.

47. On information and belief, Defendant PMF did not have a written do-not-call policy

9

while they were sending Mr. Callier the text messages.

48. Defendant PMF is not registered pursuant to § 302.101 of the Texas Business & Commerce Code to provide telephone solicitations. The https://direct.sos.state.tx.us/telephonesearch.asp site ("Texas Registration Database") does not contain Defendant PMF's registration.

49. Defendant PMF is not licensed or registered to transact business in Texas.

50. Defendant PMF doesn't qualify for an exemption under § 302.053.

51. No emergency necessitated none of the alleged illegal automated text messages.

52. Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing text messages consumed part of this capacity.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES
## AS A RESULT OF THE CALLS

53. Defendant PMF automated text messages harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

54. Defendant PMF automated text messages harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

55. Defendant PMF automated text messages harmed Plaintiff by intruding upon Plaintiff's seclusion.

56. Plaintiff has been harmed, injured, and damaged by the text messages including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of his cell phone.

## The Plaintiff's cell phone is a residential number

57. The text messages were to Plaintiff's cellular phone (915) 383-4604 which is Plaintiff's

personal cell phone that he uses for personal, family, and household use. Plaintiff maintains no landline phones at his residence and has not done so for at least 15 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

### Violations of the Texas Business and Commerce Code 305.053

58.     The actions of Defendant PMF violated the Texas Business and Commerce Code 305.053 by placing automated text messages to a cell phone which violates 47 USC 227(b). The automated text messages by Defendant PMF violated Texas law by placing automated text messages to a cell phone which violates 47 USC 227(c)(5) and 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e).

59.     The text messages by the Defendant PMF violated Texas law by spoofing the caller IDs per 47 USC 227(e) which in turn violates the Texas statute.

### Violations of the Texas Business and Commerce Code 302.101

60.     The actions of Defendant PMF violated the Texas Business and Commerce Code § 302.101 by placing solicitation automated text messages to Plaintiff, a Texas resident, without having a valid solicitation registration certificate and a valid bond.

61.     Under Texas Business and Commerce Code § 302.302(a) Plaintiff is entitled to seek damages of up to $5000 per violation of § 302.101.

## COUNT ONE:
### Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing Without Prior Express Written Consent

62. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

63. Defendant PMF and/or their agents placed automated text messages to Plaintiff's cellular telephone.

64. Plaintiff never consented to receive automated text messages from Defendant PMF. Plaintiff has had no relationship with Defendant PMF.

65. Defendant PMF's automated text messages were made for purposes of advertising and marketing their goods and services. These automated text messages constituted commercial advertising and telemarketing as contemplated by the TCPA.

66. The automated text messages were made using an ATDS to the cellular phone of Plaintiff in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and (B).

67. As a result of their unlawful conduct, Defendant PMF repeatedly invaded the personal privacy of Plaintiffs, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling Plaintiff to recover $500 in statutory damages for each violation and an injunction requiring Defendant PMF to stop their unlawful text message campaigns.

68. Not only did Defendant PMF make these violating automated text messages, but Defendant and/or their agents also did so "knowingly" and/or "willfully' under 47 U.S.C. § 227 (b)(3)(C).

69. If the Court finds that Defendant PMF willfully or knowingly violated this subsection, the Court may exercise its discretion to increase the amount of the award from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

## COUNT TWO:

**(Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))**

70. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

71. The foregoing acts and omissions of Defendant PMF and/or their affiliates or agents constitute a violation of FCC regulations by making multiple telemarketing solicitations to a consumer on the National Do-Not-Call Registry within a 12-month period in violation of 47 C.F.R. § 64.1200(c)(2).

72. Defendant PMF sent automated text messages to Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the automated text messages, in violation of 47 U.S.C § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

73. Plaintiff was statutorily damaged at least thirteen (13) times under 47 U.S.C. § 227(c)(3)(F) by the Defendant by the automated text messages described above, in the amount of $500 per automated text message.

74. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

75. Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## COUNT THREE:

**Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)**

**(Against All Defendants)**

76. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

77. The foregoing acts and omissions of Defendant PMF and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking the following:

    a. A written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1)[2];

    b. Training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2)[3]; and,

    c. In the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

78. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

79. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

## COUNT FOUR

### Violations of The Texas Business and Commerce Code 305.053

80. Plaintiff incorporates the foregoing allegations as if set forth herein.

81. The foregoing acts and omissions of Defendant PMF and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing automated text messages to Mr. Callier cellular telephone number

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 (codifying a June 26, 2003 FCC order

without his prior express written consent in violation of 47 USC 227 et seq. The Defendants violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

82. Plaintiff is entitled to an award of at least $500 in damages for each such violation.

**Texas Business and Commerce Code 305.053(b)**

83. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053(c)**

## COUNT FIVE

### Violations of The Texas Business and Commerce Code 302.101

84. Plaintiff incorporates the foregoing allegations as if set forth herein. by reference each and every allegation set forth in the preceding paragraphs.

85. The foregoing acts and omissions of Defendant PMF and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 302.101**, by making non-registered solicitation automated text messages to Plaintiff's cellular telephone number without his prior express written consent.

86. Plaintiff is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 302.302(a)**.

87. Plaintiff is entitled to recover all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees. **Texas Business and Commerce Code 302.302(d).**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brandon Callier prays for judgment against the defendant jointly and severally as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendant violates the TCPA and Texas state law;

C. An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D. An award of $1500 per automated text message in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against the corporations and individuals for 13 automated text messages.

E. An award of $1500 per automated text message in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporations and individuals for 13 automated text messages.

F. An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

G. An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101.

H. An award to Mr. Callier of damages, as allowed by law under the TCPA;

I. An award to Mr. Callier of interest, costs, and attorneys' fees, as allowed by law and equity

J. Such further relief as the Court deems necessary, just, and proper.

June 29, 2022,                              Respectfully submitted,

*/s/ Brandon Callier*

Brandon Callier
Plaintiff, Pro Se
6336 Franklin Trail Dr
El Paso, TX 79912
915-383-4604